Francis S. Ryu, Esq., SBN 176597
**RYU LAW FIRM**
915 Wilshire Boulevard, Suite 1775
Los Angeles, California 90017
Telephone: (323) 931-5270
Facsimile: (323) 931-5271
*Francis@RyuLaw.com*
Attorneys for Plaintiffs
DALPHIA PARTNERS, LLC
and JAMES R. DIPISA

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DALPHIA PARTNERS, LLC, a California limited liability company; and JAMES R. DIPISA, an individual;<br><br>Plaintiffs,<br>vs.<br><br>JULIEN BANEUX, an individual; BNX CAPITAL, LLC, a Delaware limited liability company; BNX CAPITAL, LLC, a Texas limited liability company; and DOES 1-25, inclusive;<br><br>Defendants. | Case No.: 8:25-cv-02889-JWH-DFM<br>[Hon. John W. Holcomb]<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>1. MISAPPROPRIATION OF TRADE SECRETS (Defend Trade Secrets Act, 18 U.S.C. Section 1836, et seq.)<br>2. MISAPPOPRIATION OF TRADE SECRETS (Cal. Civ. Code Section 3426, et.seq.)<br>3. BREACH OF CONTRACT<br>4. DECLARATORY AND INJUNCTIVE RELIEF |

Plaintiffs Dalphia Partners, LLC and James R. DiPisa (collectively "PLAINTIFFS"), respectfully submit this First Amended Complaint and allege as follows as to themselves and their known acts, and on information and belief as to all other matters:

## I. PARTIES

1. Plaintiff Dalphia Partners, LLC ("DALPHIA") is, and at all times mentioned herein has been, a California limited liability company with its principal place of business located in Orange County, California.

2. Plaintiff James R. DiPisa ("DiPISA") is an individual and at all times mentioned herein has been, a citizen of Orange County, California. DiPISA is DALPHIA's founder and managing member.

3. PLAINTIFFS are informed and believe and based thereon allege that defendant Julien Baneux ("BANEUX") is an individual currently residing in the State of Texas. At the time the Confidentiality Agreement, which forms the basis of this action was executed, and throughout the parties' confidential communications in years 2023 and 2024, BANEUX was a resident of Los Angeles County, California.

4. PLAINTIFFS are informed and believe and based thereon allege that defendant BNX Capital, LLC ("BNX DE") is a Delaware limited liability company formed on or about May 19, 2020, and controlled by BANEUX. BNX DE is a party to the Confidentiality Agreement that forms the basis of this action.

5. Unbeknownst to PLAINTIFFS, BNX DE was terminated on or about April 4, 2024, and no disclosure of that termination was ever made to PLAINTIFFS despite continuing reliance on the parties' confidentiality agreement.

6. PLAINTIFFS are informed and believe and based thereon allege that defendant BNX Capital, LLC ("BNX TX") is a Texas limited liability company formed on or about February 9, 2024, and is owned and controlled by BANEUX.

7. BNX TX was formed while BNX DE remained an active legal entity, and the two entities coexisted simultaneously from February 9, 2024 through April 4, 2024. During this period, both entities were owned and controlled by BANEUX and were held out to PLAINTIFFS and third parties as a single, continuing business enterprise, notwithstanding that BNX TX and BNX DE are, in fact, two legally distinct limited liability companies.

8. At no time during this coexistence period did BANEUX disclose the formation of BNX TX, the impending dissolution of BNX DE, or any purported change in the entity responsible for receiving, holding, or using PLAINTIFFS' confidential information.

9. PLAINTIFFS are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 25, inclusive, and therefore sue these Defendants by these fictitious names. PLAINTIFFS will amend this complaint to allege their true names and capacities when ascertained. PLAINTIFFS are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that PLAINTIFFS' damages as herein alleged were proximately caused by those Defendants.

10. PLAINTIFFS further allege on information and belief that the actions of each Defendant were fully ratified by the others. Specifically, and without limitation, PLAINTIFFS allege on information and belief that the breaches, disclosures, omissions, and other wrongful conduct alleged herein and attributed to one or more of the named Defendants were undertaken with the express or implied approval, knowledge, and ratification of each and all the other Defendants.

## II. SUBJECT MATTER JURISDICTION

11. This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because PLAINTIFFS assert claims arising under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq.

12. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between PLAINTIFFS and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III. PERSONAL JURISDICTION & VENUE

13. This Court has personal jurisdiction over Defendants because Defendants expressly consented to jurisdiction in California through BNX DE and BANEUX executing a Confidentiality Agreement (hereinafter, alternatively the "<u>Confidentiality Agreement</u>" or "<u>NDA</u>") providing that *"any action or proceeding arising out of or relating to this Agreement shall be submitted to the jurisdiction of any federal or state court sitting in the State of California, County of Los Angeles."* A true and correct copy of the NDA containing the forum-selection clause is attached hereto as **Exhibit "A."** Defendants' consent to jurisdiction is mandatory and enforceable, does not

contravene public policy, and independently establishes personal jurisdiction over Defendants in this Court.

14. In addition, Defendants have purposefully availed themselves of the privilege of conducting activities in California by entering into a California-based confidentiality agreement, directing confidential communications and disclosures into California, and engaging in conduct that caused foreseeable harm to PLAINTIFFS in California.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to PLAINTIFFS' claims occurred in this District, including the receipt, use, and misappropriation of PLAINTIFFS' confidential and proprietary information in California. Venue is independently and contractually proper based on the parties' mandatory forum-selection clause, which requires that "*any action or proceeding arising out of or relating to this Agreement shall be submitted to the jurisdiction of any federal or state court sitting in the State of California, County of Los Angeles*", and which Defendants knowingly and voluntarily agreed to.

## IV. GENERAL ALLEGATIONS

### A. Development and Ownership of Trade Secrets

16. Prior to DALPHIA's formation, DiPISA independently conceived and developed non-public proprietary concepts, methodologies, analytical frameworks, and workflows relating to the identification, analysis, and prediction of mergers and acquisitions activity in the registered investment adviser industry (the "DALPHIA M&A IP").

17. As conceived by PLAINTIFFS, the DALPHIA M&A IP was intended to function as an advanced screening and analytics platform that (a) organized and analyzed thousands of historical data points relating to registered investment adviser firms that are otherwise available only in unwieldy and non-user friendly formats from the Securities and Exchange Commission's ("SEC") website, and (b) integrated publicly available SEC Form ADV data with historical M&A transaction data to generate predictive insights regarding which firms were most likely to be acquired based on quantitative and qualitative characteristics reflected in their historical filings.

18. These concepts were not generally known, were the product of substantial labor and expertise, and derived independent economic value from their secrecy.

19. Upon DALPHIA's formation, DiPISA contributed the DALPHIA M&A IP to DALPHIA, which thereafter exclusively possessed, controlled, refined, and disclosed the information in confidence, and such contribution vested DALPHIA with all rights to assert claims for misappropriation, misuse, and unauthorized disclosure of that intellectual property.

20. At all relevant times, PLAINTIFFS lawfully owned and/or controlled the DALPHIA M&A IP and took reasonable measures to maintain its secrecy.

**B. Confidential Outreach, Confidentiality Agreement Transmission, and Email Chain**

21. On or about November 1, 2023, following the publication of a Citywire article announcing DiPISA's departure from Robertson Stephens Wealth Management and the launch of DALPHIA in October 2023, BANEUX, who was then employed full time as Director of Business Development at Certuity, contacted DiPISA by telephone and left a voicemail expressing interest in a potential collaboration and dissatisfaction with his current career prospects.

22. On or about November 3, 2023, DiPISA and BANEUX had their first substantive discussion during a Zoom meeting. During that meeting, BANEUX expressed interest in collaborating on the development of the DALPHIA M&A IP.

23. Following that initial interaction, later that evening and throughout November 2023, PLAINTIFFS initiated and controlled all substantive follow-up communications regarding potential collaborations and made clear that the discussions would involve confidential DALPHIA concepts disclosed solely for evaluation.

24. Consequently, as a prerequisite to further dialogue, DiPISA transmitted a written Confidentiality Agreement to BANEUX for execution, expressly to govern the handling and use of DALPHIA's proprietary information. The Confidentiality Agreement was a binding, bilateral written agreement governing the disclosure of non-public business information, concepts, methodologies, product ideas, and intellectual property for the limited purpose of evaluating a

potential collaboration, and it expressly prohibited use of such information for any other purpose, including commercial exploitation, disclosure to third parties, or claiming ownership or inventorship rights absent a definitive written agreement. **Exhibit "A."**

25. The Confidentiality Agreement further provided that no license, assignment, or transfer of intellectual property rights was granted by implication or otherwise, and that all confidential information disclosed by PLAINTIFFS remained their exclusive property unless and until the parties executed a separate written agreement expressly providing otherwise. **Exhibit "A."**

26. Although the Confidentiality Agreement contained inverted "*Disclosing*" and "*Receiving*" party labels due to a drafting error by DALPHIA, the parties' communications and course of dealing unmistakably establish that PLAINTIFFS were the source of the confidential information and that Defendants were recipients bound by confidentiality and restricted-use obligations.

27. BANEUX executed the Confidentiality Agreement on behalf of BNX DE and expressly agreed to be bound by, and to accept, the obligations imposed thereunder. BNX TX did not exist at the time BANEUX executed the Confidentiality Agreement.

28. Immediately following execution of the NDA, DiPISA began disclosing DALPHIA's confidential and proprietary information through a course of communications and collaboration that included, but was not limited to, an email thread expressly titled *"Confidential: Let's productize these ideas."* Through these communications and related communications and discussions, DiPISA transmitted non-public concepts, methodologies, data-structuring approaches, analytical models, and proposed product architectures comprising, without limitation, the DALPHIA M&A IP to Defendants.

29. BANEUX acknowledged the confidential nature of these disclosures, substantively engaged with the concepts presented, proposed implementation steps, and repeatedly referred to the information using collective terms such as "we," "our," and "the project we have been working on," without ever asserting prior independent invention or disputing confidentiality.

**C. No Written License or Assignment of Rights**

30. There is no written agreement, license, assignment, or other instrument granting Defendants any independent ownership, inventorship, or usage rights in the DALPHIA M&A IP.

31. The Confidentiality Agreement expressly disclaims any transfer or conveyance of intellectual property rights to Defendants absent a final definitive written agreement.

32. PLAINTIFFS never executed any written agreement granting, licensing, assigning, or otherwise transferring any rights in the DALPHIA M&A IP to Defendants.

**D. Non-Provisional Patent Applications and Entity-Shifting Conduct**

33. Defendants subsequently and intentionally misused and exploited PLAINTIFFS' confidential information for purposes beyond any limited evaluative use permitted under the Confidentiality Agreement.

34. On or about June 30, 2025, BANEUX filed and prosecuted one or more non-provisional patent applications that disclosed and relied upon PLAINTIFFS' confidential information, while intentionally excluding PLAINTIFFS and other contributors from inventorship.

35. Prior to those filings, BANEUX previously referred to the patent application as "ours," communicated filing deadlines to PLAINTIFFS, and acknowledged the involvement of multiple contributors. Notwithstanding those representations, BANEUX later asserted under oath that he alone conceived and developed technology, and actually filed and prosecuted one or more non-provisional patent applications based on that false assertion.

36. At the time the Confidentiality Agreement was executed, BNX DE was the entity with which BANEUX held himself out as being affiliated. Unknown to DALPHIA, BNX DE was terminated in or about April 2024. BANEUX never disclosed the termination of BNX DE to DALPHIA, notwithstanding the continuing obligations arising under the Confidentiality Agreement.

37. Defendants' subsequent efforts to disavow responsibility by selectively attributing conduct, intellectual property, or obligations to one BNX entity or the other are inconsistent with Defendants' own course of conduct during the February 2024 to April 2024 coexistence period,

when BNX DE and BNX TX operated simultaneously under BANEUX's sole control and continued to receive and exploit PLAINTIFFS' confidential information without disclosure or consent.

**E. Defendants File Jurisdictionally Defective Counterclaims in Texas**

38. DALPHIA is the largest minority equity holder in RIA Growth Catalyst LLC ("RIA"), a company that is majority controlled and operated by Defendants.

39. The DALPHIA M&A IP was conceived and developed by DiPISA and DALPHIA and was disclosed to BANEUX solely for limited use in connection with RIA, an entity in which DALPHIA invested capital and holds only a passive minority equity interest.

40. In furtherance of their bad-faith litigation strategy, Defendants asserted meritless and jurisdictionally defective counterclaims in a lawsuit pending in Dallas County, Texas, captioned *DALPHIA Partners, LLC v. BNX Capital, LLC*, Case No. DC-25-11695 (the "Texas Action"), falsely alleging that it was DALPHIA and DiPISA that breached the Confidentiality Agreement.

41. The Texas Action was initiated by DALPHIA and concerns Defendants' misuse of RIA resources and waste of company assets for personal gain, in violation of RIA's governing documents. A true and correct copy of the Petition filed by DALPHIA in the Texas Action is attached hereto as **Exhibit "B."**

42. BANEUX responded by asserting retaliatory and baseless counterclaims alleging that DALPHIA and DiPISA breached the Confidentiality Agreement. *See* Counterclaim III (Breach of Contract – Confidentiality Agreement), attached hereto as **Exhibit "C."**

43. Defendants' Counterclaim in the Texas Action is not only factually meritless but also jurisdictionally improper and is presently the subject of a pending motion to dismiss, including on the independent ground that it was filed in direct contravention of the mandatory forum-selection clause contained in the Confidentiality Agreement requiring suit in a federal or state court

sitting in California, County of Los Angeles. A true and correct copy of the motion to dismiss is attached hereto as **Exhibit "D."**

**F. Defendants' Intentional Breach of the Confidentiality Agreement and Willful Misappropriation of Trade Secrets**

44. As was recently uncovered, it was Defendants that breached the Confidentiality Agreement and misappropriated trade secrets by claiming sole ownership of the DALPHIA M&A IP, including by incorporating and relying upon those Trade Secrets in one or more non-provisional patent applications.

45. Those patent application(s) disclosed PLAINTIFFS' Trade Secrets and falsely asserted exclusive ownership and inventorship by Defendants, notwithstanding Defendants' knowledge that the underlying subject matter was conceived and developed by PLAINTIFFS and disclosed only under confidentiality restrictions.

46. The filing of the non-provisional patent application(s) threatens public disclosure of PLAINTIFFS' Trade Secrets and risks permanently destroying the value, secrecy, and competitive advantage of the DALPHIA M&A IP.

47. Defendants' conduct, taken as a whole, evidences knowing misappropriation, bad faith, and willfulness and has caused and continues to cause PLAINTIFFS irreparable harm. Defendants' conduct was knowing, deliberate, and undertaken with conscious disregard of PLAINTIFFS' confidentiality and ownership rights.

**G. Following the Filing of the Complaint, Defendant's Patent Application Published, Improperly Exposing Dalphia M&A IP to the Public**

48. The initial Complaint in this action, alleging, upon information and belief, that Baneux had filed one or more patent applications was filed on December 31, 2025. Following the filing of the Complaint, it has since been confirmed that, on January 1, 2026, Baneux published United States Patent Application Publication No. US 2026/0004355 A1, which includes an abstract describing an Investment Analysis System and Method for Viewing and Analyzing Data Insights, Graphics, and Metrics to Predict Probability of Acquisition (the "Public Patent Application").

49. The Public Patent Application discloses Plaintiffs' non-public trade secrets, including, without limitation, system and methods based on the DALPHIA M&A IP. The Patent Application Publication further states that it claims priority to a related provisional patent application filed on July 1, 2024 (Provisional Application No. 63/666,349).

50. The Patent Application was directly and materially derived from, and based upon, Plaintiffs' proprietary DALPHIA M&A IP, yet Baneux intentionally failed to name DiPISA as a co-inventor.

51. By filing and publishing the Patent Application, Defendants publicly disclosed Plaintiffs' non-public Trade Secrets, thereby permanently destroying the secrecy, value, and competitive advantage of the DALPHIA M&A IP.

52. Defendants' conduct, taken as a whole, constitutes knowing and willful misappropriation undertaken in bad faith and in conscious disregard of Plaintiffs' confidentiality and ownership rights, and has caused and continues to cause Plaintiffs irreparable harm for which there is no adequate remedy at law.

## FIRST CAUSE OF ACTION

**Misappropriation of Trade Secrets (Defend Trade Secrets Act, § 1836 et seq.)**

(Against All Defendants)

53. PLAINTIFFS re-allege and incorporate by reference paragraphs 1 through 52, inclusive, of this Complaint as though fully set forth herein.

54. PLAINTIFFS own and possess valuable trade secrets within the meaning of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(3), including but not limited to the DALPHIA M&A IP and related confidential information, processes, models, methodologies, architectures, analytics, and business concepts (collectively, the "Trade Secrets").

55. The Trade Secrets include proprietary processes and systems for identifying, analyzing, and predicting mergers and acquisitions opportunities in the registered investment adviser market, including, without limitation, the structuring and integration of regulatory data, predictive scoring models, screening and targeting tools, and related analytics, as described herein.

56. The Trade Secrets are not generally known to and are not readily ascertainable by proper means by competitors or the public, and derive independent economic value from their secrecy.

57. PLAINTIFFS undertook reasonable measures under the circumstances to maintain the secrecy of the Trade Secrets, including, without limitation, requiring Defendants to enter into a written NDA governing the use, protection, and confidentiality of such information.

58. The Trade Secrets are related to products and services used in, and intended for use in, interstate commerce. PLAINTIFFS' confidential methodologies, analytics, and business concepts, including the DALPHIA M&A IP disclosed to Defendants, were developed for commercial application within the registered investment adviser industry and were intended to be evaluated, marketed, and deployed across state lines, including through interstate electronic communications, data aggregation, and data processing.

59. Defendants acquired the Trade Secrets through improper means within the meaning of 18 U.S.C. § 1839(5), including by receiving confidential disclosures under a binding Confidentiality Agreement and thereafter misusing and disclosing the Trade Secrets for purposes beyond those expressly authorized.

60. Defendants misappropriated PLAINTIFFS' Trade Secrets within the meaning of 18 U.S.C. § 1839(5) by using and disclosing them without PLAINTIFFS' consent and in breach of their contractual and legal duties, including, without limitation, by filing and prosecuting one or more non-provisional patent applications that disclosed and relied upon PLAINTIFFS' Trade Secrets while falsely claiming exclusive ownership and inventorship, including without limitation, the Public Patent Application.

61. Defendants' one or more non-provisional patent applications constituted unauthorized disclosures of PLAINTIFFS' Trade Secrets to third parties, including the United States Patent and Trademark Office, and were undertaken for Defendants' own competitive and commercial advantage, including, without limitation the Public Patent Application.

62. Defendants further misappropriated PLAINTIFFS' Trade Secrets by excluding PLAINTIFFS from inventorship and ownership, refusing to permit inspection of the one or more non-provisional patent applications, including, without limitation the Public Patent Application, and asserting inconsistent and false positions regarding the origin, ownership, and use of the Trade Secrets.

63. Defendants knew or had reason to know that the Trade Secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and to limit their use, including pursuant to the parties' NDA and course of dealing.

64. Defendants' acts of misappropriation were willful and malicious within the meaning of 18 U.S.C. § 1836(b)(3)(C), as Defendants intentionally and knowingly used and disclosed PLAINTIFFS' Trade Secrets in conscious disregard of PLAINTIFFS' ownership and confidentiality rights.

65. As a direct and proximate result of Defendants' misappropriation, PLAINTIFFS have suffered and will continue to suffer substantial harm, including loss of trade secret value, loss of competitive advantage, reputational harm, and other economic damages, in an amount to be proven at trial.

66. Defendants' misappropriation has caused and will continue to cause irreparable harm for which monetary damages alone are inadequate, entitling PLAINTIFFS to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A) to prevent further use or disclosure of the Trade Secrets.

67. PLAINTIFFS are entitled to recover damages under 18 U.S.C. §1836(b)(3)(B), including actual loss and unjust enrichment not otherwise accounted for.

68. Because Defendants' conduct was willful and malicious, PLAINTIFFS are entitled to recover exemplary damages and their reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3)(C).

69. PLAINTIFFS seek all available legal and equitable relief, including injunctive relief, damages, exemplary damages, attorneys' fees, costs, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION

**Misappropriation of Trade Secrets (Cal. Civ. Code § 3426 et seq.)**

(Against All Defendants)

70. PLAINTIFFS re-allege and incorporate by reference paragraphs 1 through 69, inclusive, of this Complaint as though fully set forth herein.

71. PLAINTIFFS own and possess valuable trade secrets within the meaning of the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civil Code § 3426 et seq., including but not limited to the DALPHIA M&A IP and related confidential information, processes, models, methodologies, architectures, analytics, and business concepts (collectively, the "Trade Secrets").

72. The Trade Secrets include proprietary processes and systems for identifying, analyzing, and predicting mergers and acquisitions opportunities in the registered investment adviser market, including the structuring and integration of regulatory data, predictive scoring models, screening and targeting tools, and related analytics, as detailed herein.

73. The Trade Secrets are not generally known to the public or to competitors, are not readily ascertainable by proper means, and derive independent economic value from their secrecy.

74. PLAINTIFFS undertook reasonable efforts under the circumstances to maintain the secrecy of the Trade Secrets, including, without limitation, requiring Defendants to enter into a written NDA governing the use and protection of such information.

75. Defendants acquired the Trade Secrets through improper means within the meaning of Cal. Civil Code § 3426.1(b), including by receiving confidential disclosures under a binding Confidentiality Agreement and thereafter misusing and disclosing the information for purposes beyond those authorized.

76. Defendants misappropriated PLAINTIFFS' Trade Secrets by using and disclosing them without consent and in breach of their contractual and legal duties, including upon information and belief by filing and prosecuting one or more non-provisional patent applications, including without limitation the Public Patent Application, that disclosed and relied upon PLAINTIFFS' Trade Secrets while falsely claiming exclusive ownership and inventorship.

77. Defendants' one or more non-provisional patent applications, including without limitation, the Public Patent Application, constituted an unauthorized disclosure of PLAINTIFFS' Trade Secrets to third parties, including the United States Patent and Trademark Office and the public, and was undertaken for Defendants' own competitive and commercial advantage.

78. Defendants further misappropriated PLAINTIFFS' Trade Secrets by excluding PLAINTIFFS from inventorship and ownership, refusing to permit inspection of the one or more non-provisional patent applications, and asserting inconsistent and false positions regarding the origin, ownership, and use of the Trade Secrets.

79. Defendants knew or had reason to know that the Trade Secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use, including pursuant to the NDA and the parties' relationship.

80. Defendants' acts of misappropriation were willful and malicious within the meaning of Cal. Civil Code § 3426.3(c), as Defendants intentionally and knowingly disclosed and used PLAINTIFFS' Trade Secrets in conscious disregard of PLAINTIFFS' rights.

81. As a direct and proximate result of Defendants' misappropriation, PLAINTIFFS have suffered and will continue to suffer substantial harm, including loss of trade secret value, loss of competitive advantage, reputational harm, and other economic damages, in an amount to be proven at trial.

82. Defendants' misappropriation has caused and will continue to cause irreparable harm for which monetary damages alone are inadequate, entitling PLAINTIFFS to injunctive relief pursuant to Cal. Civil Code § 3426.2 to prevent further use or disclosure of the Trade Secrets.

83. PLAINTIFFS are entitled to recover damages under Cal. Civil Code § 3426.3, including actual loss, unjust enrichment not otherwise accounted for, and, because Defendants' conduct was willful and malicious, exemplary damages.

84. PLAINTIFFS are further entitled to recover their reasonable attorneys' fees and costs pursuant to Cal. Civil Code § 3426.4.

85. PLAINTIFFS seek all available legal and equitable relief, including injunctive relief, damages, exemplary damages, attorneys' fees, costs, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

WHEREFORE, PLAINTIFFS pray for judgment against the Defendants as set forth below.

## THIRD CAUSE OF ACTION

**Breach of Contract**

(Against All Defendants)

86. PLAINTIFFS reallege and incorporate by reference paragraphs 1 through 85, inclusive, of this Complaint as though fully set forth herein.

87. On or about November 3, 2023, DALPHIA and BNX DE, as executed by BANEUX, entered into a Confidentiality Agreement which expressly governs the handling, use, and protection of PLAINTIFFS' confidential information and trade secrets.

88. The Confidentiality Agreement defines "Confidential Information" broadly to include, among other things, proprietary information, trade secrets, intellectual property, research, know-how, ideas, inventions, patents, formulas, processes, techniques, algorithms, programs, models, plans, strategies, methodologies, work product, data, financial information, and related materials supplied by PLAINTIFFS.

89. PLAINTIFFS performed, or were excused from performing, all conditions, covenants, and obligations required under the Confidentiality Agreement and related agreements.

90. Defendants breached the Confidentiality Agreement by, *inter alia*, filing one or more non-provisional patent applications that disclosed and relied upon PLAINTIFFS' Confidential Information without PLAINTIFFS' prior written consent, and by improperly using and disclosing such Confidential Information for BANEUX's own competitive advantage and to advance Defendants' market objectives at PLAINTIFFS' expense.

91. Defendants' breaches of the Confidentiality Agreement were willful and have caused, and continue to cause, substantial harm to PLAINTIFFS.

92. Defendants' unauthorized disclosure of PLAINTIFFS' trade secrets and confidential information to third parties, including the United States Patent and Trademark Office, and the public by the filing of the Public Patent Application, and has resulted, and will continue to result, in the public exposure of such information, thereby irreparably destroying its secrecy and economic value.

93. As a direct and proximate result of Defendants' breaches of the Confidentiality Agreement, PLAINTIFFS have suffered economic damages, reputational harm, loss of goodwill, competitive disadvantage, and other damages in an amount to be proven at trial. PLAINTIFFS reserve the right to amend this Complaint to allege additional damages as they are ascertained.

WHEREFORE, PLAINTIFFS pray for judgment against the Defendants as set forth below.

## FOURTH CAUSE OF ACTION

### Declaratory and Injunctive Relief

(Against All Cross-Defendants)

94. PLAINTIFFS re-allege and incorporate by reference paragraphs 1 through 93, inclusive, of this Complaint as though fully set forth herein.

95. PLAINTIFFS seek declaratory and injunctive relief to prevent ongoing and threatened misappropriation, disclosure, and misuse of their confidential information and trade secrets, including the DALPHIA M&A IP, by Defendants.

96. Defendants have misappropriated PLAINTIFFS' trade secrets and confidential information by, among other things, using and disclosing such information outside the scope permitted by the parties' NDA, filing and prosecuting one or more non-provisional patent applications based on PLAINTIFFS' trade secrets without authorization, and falsely claiming exclusive ownership and inventorship of PLAINTIFFS' intellectual property.

97. Defendants' misconduct is ongoing and poses a continuing threat of irreparable harm, including the loss of trade secret protection, competitive disadvantage, erosion of goodwill, and the inability of PLAINTIFFS to control or commercialize their proprietary technology.

98. The Confidentiality Agreement expressly entitles Plaintiffs to injunctive relief. Paragraph 8(f) provides that "*money damages would not be a sufficient remedy for any breach of this Agreement by the Receiving Party or any of its Representatives and that, in addition to all other remedies, the Disclosing Party shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach, without the requirement to secure or post a bond.*" That provision further states that "*Receiving Party will not oppose any request for such relief on the basis that the Disclosing Party has not or will not suffer irreparable harm or that the Disclosing Party has an adequate remedy at law.*" See **Exhibit "A."**

99. Accordingly, PLAINTIFFS are entitled to declaratory and injunctive relief contractually under Paragraph 8(f) of the Confidentiality Agreement.

100. Furthermore, disclosure of trade secrets through one or more non-provisional patent applications, including without limitation the Public Patent Application and related public disclosures irreversibly destroys the secrecy and economic value of such information, and monetary damages alone are insufficient to remedy this harm.

101. PLAINTIFFS have no adequate remedy at law to prevent Defendants' continued misuse and disclosure of PLAINTIFFS' trade secrets and confidential information.

102. The balance of hardships weighs decisively in PLAINTIFFS' favor. Thus, an Order by this Court declaring PLAINTIFFS' to be the lawful owners of the trade secrets is necessary to ascertain the rights of the parties herein and enjoining Defendants from using or disclosing PLAINTIFFS' trade secrets will not impose any undue hardship on Defendants, who have no legitimate right to exploit PLAINTIFFS' confidential information, while denial of injunctive relief will cause PLAINTIFFS substantial and irreparable harm.

103. The public interest favors injunctive relief to enforce confidentiality agreements, protect trade secrets, prevent unfair competition, and deter the misuse of confidential business information.

104. PLAINTIFFS are entitled to injunctive relief pursuant to, inter alia, California Civil Code § 3426.2, 18 U.S.C. § 1836(b)(3)(A), and the Court's inherent equitable powers.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS pray of Defendants, and each of them, as follows:

**FIRST – FOURTH CAUSES OF ACTION**

1) For general damages according to proof;

2) For compensatory damages in an amount to be determined at trial arising from Defendants' breaches of contract, misappropriation of trade secrets;;

3) For restitution and disgorgement of all monies, profits, benefits, and other amounts wrongfully obtained by Defendants;

4) For injunctive relief, preliminary and permanent, enjoining Defendants from further use, disclosure, or misappropriation of PLAINTIFFS' confidential information and trade secrets, and requiring the return or destruction of all such information;

5) For declaratory relief declaring that PLAINTIFFS own the DALPHIA M&A IP and related trade secrets and that Defendants have no ownership, license, or inventorship rights therein;

6) For exemplary and punitive damages, where permitted by law, including pursuant to California Civil Code section 3426.3(c) and 18 U.S.C. § 1836(b)(3)(C);

7) For attorneys' fees and costs as allowed by law, including pursuant to California Civil Code section 3426.4 and any applicable contractual provisions;

8) For pre-judgment and post-judgment interest as permitted by law; and

9) For such other and further relief as the court may deem proper.

**RYU LAW FIRM**

DATED: January 13, 2026

Francis S. Ryu, Esq.
Attorneys for PLAINTIFFS
DALPHIA PARTNERS, LLC
and JAMES R. DIPISA

**DEMAND FOR BENCH TRIAL**

PLAINTIFFS hereby elect to proceed with a non-jury trial pursuant to Code of Civil Procedure section 631(f) and the express waiver of a jury to any cause of action related to the NDA and pursuant to its terms thereto. Thus, PLAINTIFFS respectfully demands that this matter be tried before the Court sitting without a jury.

**RYU LAW FIRM**

DATED: January 13, 2026

Francis S. Ryu, Esq.
Attorney for PLAINTIFFS DALPHIA PARTNERS, LLC and JAMES R. DIPISA